[No. 14031.   In Bank. — July 22, 1891.]

# W. W. BRISON, RESPONDENT, v. CARRIE M. BRISON, APPELLANT.

APPEAL FROM ORDER DENYING NEW TRIAL — REVIEW — SUFFICIENCY OF COMPLAINT — FINDINGS — EVIDENCE. — Upon an appeal from an order denying a new trial, the appellate court cannot consider the sufficiency either of the complaint or of the findings to support the judgment, and its examination of the evidence is limited to a consideration of its sufficiency to sustain the findings of fact.

ID. — OMISSION OF MATERIAL FINDINGS — MISTRIAL — DECISION AGAINST LAW — SUPPORT OF JUDGMENT. — Although, as a general rule, a failure to find upon material issues produces a mistrial, and renders the decision against law, yet this rule is applicable only where a finding upon the omitted issues might have the effect to countervail or destroy the effect of the other findings; and if findings are made which determine issues sufficient to uphold the judgment, it is not a mistrial or against law to fail or omit to make findings upon other issues, which, if made, would not invalidate the judgment.

ID. — FINDING OF CONSTRUCTIVE FRAUD — OMISSION TO FIND ACTUAL FRAUD. — Where a complaint alleges both actual and constructive fraud as grounds for enforcing a reconveyance of real property conveyed by the plaintiff to the defendant, a finding of constructive fraud is sufficient, and a failure to find upon the issue as to actual fraud does not constitute a mistrial, or render the decision against law.

CONSTRUCTION OF FINDINGS. — If the language of a finding is susceptible of different constructions, one of which is supported by the evidence, and the other not, the appellate court will give to the language that construction which finds such support, rather than a construction which would have the effect to defeat the finding.

CONSTRUCTIVE FRAUD — BREACH OF CONFIDENTIAL RELATION — HUSBAND AND WIFE — DEED IN LIEU OF WILL — PROMISE TO RECONVEY — VIOLATION OF TRUST. — Where a husband, upon leaving home, makes an absolute deed to his wife instead of a will, relying upon her promise to reconvey the property to him on demand if he should return in safety, her subsequent refusal to reconvey the property upon his return, and demand for a reconveyance, is not merely the breach of an agreement, but

| 90 | 323 |
| 91 | 46 |
| 90 | 323 |
| 92 | 167 |
| 93 | 526 |
| 90 | 323 |
| 95 | 548 |
| 90 | 323 |
| 96 | 59 |
| 90 | 323 |
| 97 | 262 |
| 90 | 323 |
| 99 | 161 |
| 99 | 382 |
| 90 | 323 |
| 102 | 134 |
| 102 | 587 |
| 90 | 323 |
| 103 | 93 |
| 103 | 102 |
| 90 | 323 |
| 106 | 237 |
| 106 | 375 |
| 90 | 323 |
| 107 | 301 |
| 90 | 323 |
| 108 | 243 |
| 90 | 323 |
| 115 | 147 |
| 115 | 673 |
| 90 | 322 |
| 119 | 436 |
| 90 | 323 |
| 120 | 565 |
| 90 | 323 |
| 122 | 117 |
| 123 | 222 |
| 90 | 323 |
| 125 | 272 |
| 90 | 323 |
| 127 | 85 |
| 127 | 361 |
| 90 | 323 |
| 128 | 212 |
| a128 | 325 |
| a128 | 525 |
| 90 | 323 |
| 131 | 573 |
| 90 | 323 |
| 132 | 400 |
| 90 | 323 |
| 134 | 175 |
| 134 | 206 |
| 90 | 323 |
| 136 | 677 |
| 90 | 323 |
| 138 | 559 |
| 138 | 722 |
| 90 | 323 |
| 141 | 165 |
| 141 | 169 |
| 90 | 323 |
| 145 | 461 |
| 90 | 323 |
| 148 | 151 |

is the betrayal of a confidence and the violation of a trust, constituting a constructive fraud which a court of equity will remedy.

ID. — PRESUMPTION OF UNDUE INFLUENCE — ABUSE OF CONFIDENCE. — The influence which the law presumes to have been exercised by one spouse over the other is not an influence caused by any act of persuasion or importunity, but is that which is superinduced by the relation between them, and generated in the mind of the one by the confiding trust which he has in the devotion and fidelity of the other. Such influence the law presumes to have been undue, whenever this confidence is subsequently violated or abused.

APPEAL from an order of the Superior Court of Sacramento County denying a new trial.

The facts are stated in the opinion of the court.

*A. L. Hart*, for Appellant.

There is no finding upon the allegation of the complaint " that when the defendant made the representations and promises aforesaid, she was acting in bad faith, and her said representations and promises were false, and were made with the intent, on her part, to deceive, and did deceive, the plaintiff," although it is fully denied in the answer, and the allegation was a material one. (*Brison* v. *Brison*, 75 Cal. 527; 7 Am. St. Rep. 189.) The findings must dispose of all the material issues. (*Paulson* v. *Neuman*, 54 Cal. 123; *Byrnes* v. *Claffey*, 54 Cal. 155; *Glasscock* v. *Ashman*, 52 Cal. 520.) Except in instances where undue influence, fraud, or partial performance is shown, a parol agreement or promise to convey real estate cannot be made the basis of an action in equity. (*Evans* v. *Folsom*, 5 Minn. 422; *Catlin* v. *Fletcher*, 9 Minn. 85; *Sturtevant* v. *Sturtevant*, 20 N. Y. 39; 75 Am. Dec. 371; *Wheeler* v. *Reynolds*, 66 N. Y. 227; *Horn* v. *Keteltas*, 46 N. Y. 610; *Wentworth* v. *Wentworth*, 2 Minn. 277; 72 Am. Dec. 98; *Box* v. *Stanford*, 13 Smedes & M. 93; 51 Am. Dec. 142; *Ratliff* v. *Ellis*, 2 Iowa, 59; 63 Am. Dec. 471; *Melton* v. *Watkins*, 24 Ala. 433; 60 Am. Dec. 481; *Ahrend* v. *Odiorne*, 118 Mass. 261; 19 Am. Rep. 449; *Scott* v. *Bush*, 26 Mich. 418; 12 Am. Rep. 311; *Rice* v. *Roberts*, 24 Wis.

461; 1 Am. Rep. 195; *Brumfield* v. *Carson*, 33 Ind. 94; 5 Am.
Rep. 184; *Irwin* v. *Hubbard*, 49 Ind. 350; 19 Am. Rep. 679;
*Slocum* v. *Seymour*, 36 N. J. L. 138; 13 Am. Rep. 432;
*Galway* v. *Shields*, 66 Mo. 318; 27 Am. Rep. 351; *Rainbolt*
v. *East*, 56 Ind. 538; 26 Am. Rep. 40; *Myers* v. *Byerly*, 45
Pa. St. 368; 84 Am. Dec. 497; *Graves* v. *Graves*, 29 N. H.
129; *Rathbun* v. *Rathbun*, 6 Barb. 98; *Moran* v. *Hayes*, 1
Johns. Ch. 339; *Freeman* v. *Rahm*, 58 Cal. 111; *Forrester* v.
*Flores*, 64 Cal. 24; *Bayles* v. *Baxter*, 22 Cal. 575; *Roberts*
v. *Ware*, 40 Cal. 634; *Donohoe* v. *Mariposa L. & M. Co.*,
66 Cal. 317; *Russ* v. *Mebius*, 16 Cal. 351; *Burt* v. *Wilson*, 28 Cal. 632; 87 Am. Dec. 142; *Squire* v. *Harder*, 1
Paige, 494; 19 Am. Dec. 446; *Jackson* v. *Cleveland*, 15
Mich. 94; 90 Am. Dec. 266.) A voluntary conveyance
by a husband to his wife does not carry with it a re-
sulting trust. (Perry on Trusts, sec. 164; *Jenkins* v. *Pye*,
12 Pet. 240; Kerr on Fraud and Mistake, Bump's ed., 151;
*Finlayson* v. *Finlayson*, 17 Or. 347; 11 Am. St. Rep. 837;
*Freeman* v. *Rahm*, 58 Cal. 111; *Forrester* v. *Flores*, 64 Cal.
24; *Bayles* v. *Baxter*, 22 Cal. 575; *Roberts* v. *Ware*, 40
Cal. 634; *Donohoe* v. *Mariposa L. & M. Co.*, 66 Cal.
317; *Rathbon* v. *Rathbun*, 6 Barb. 98; *Movan* v. *Hayes*, 1
Johns. Ch. 339; *Klumpke* v. *Baker*, 68 Cal. 559; *Peck* v.
*Brummagim*, 31 Cal. 447; 89 Am. Dec. 195; *Smith* v.
*Smith*, 12 Cal. 217; 73 Am. Dec. 533; *Hussey* v. *Castle*, 41
Cal. 239; *Schuyler* v. *Sav. & L. Soc.*, 64 Cal. 397; *Dow* v.
*Gould and Curry S. M. Co.*, 31 Cal. 629; *Barker* v. *Koneman*,
13 Cal. 10.) A trust cannot be created by any contract
or agreement unless the contract or agreement is re-
duced to writing. (*Sturtevant* v. *Sturtevant*, 20 N. Y. 39;
75 Am. Dec. 371; *Wheeler* v. *Reynolds*, 66 N. Y. 227; *Horn*
v. *Keteltas*, 46 N. Y. 610; *Wentworth* v. *Wentworth*, 2 Minn.
277; 72 Am. Dec. 98; *Box* v. *Stanford*, 13 Smedes & M. 93;
51 Am. Dec. 142; *Ratliff* v. *Ellis*, 2 Iowa, 59; 63 Am. Dec.
471; *Melton* v. *Watkins*, 24 Ala. 433; 60 Am. Dec. 481;
*Ahrend* v. *Odiorne*, 118 Mass. 261; 19 Am. Rep. 449; *Scott*
v. *Bush*, 26 Mich. 418; 12 Am. Rep. 311; *Rice* v. *Roberts*,

24 Wis. 461; 1 Am. Rep. 195; *Brumfield* v. *Carson*, 33 Ind. 94; 5 Am. Rep. 184; *Irwin* v. *Hubbard*, 49 Ind. 350; 19 Am. Rep. 679; *Slocum* v. *Seymour*, 36 N. J. L. 138; 13 Am. Rep. 432; *Galway* v. *Shields*, 66 Mo. 318; 27 Am. Rep. 351; *Rainbolt* v. *East*, 56 Ind. 538; 26 Am. Rep. 40; *Myers* v. *Byerly*, 45 Pa. St. 368; 84 Am. Dec. 497; *Graves* v. *Graves*, 29 N. H. 129; *Russ* v. *Mebius*, 16 Cal. 351; *Burt* v. *Wilson*, 28 Cal. 632; 87 Am. Dec. 142.)

*A. P. Catlin*, and *Add C. Hinkson*, for Respondent.

The evidence shows with preponderating and convincing force that the deed was made by the husband to the wife upon a confidence in her promise, made at the time, that she would reconvey, and such evidence brings the case within the law applicable to all such cases, and especially to this. (*Brison* v. *Brison*, 75 Cal. 525; 7 Am. St. Rep. 189.)

HARRISON, J. — Upon the former appeal in this case (75 Cal. 525; 7 Am. St. Rep. 189), it was held that the facts alleged in the complaint entitled the plaintiff to the relief sought, as well upon the ground of constructive fraud on the part of the defendant, arising out of the violation of the confidential relations between her and the plaintiff, as upon the ground of the actual fraud alleged, and that the demurrer to the complaint should have been overruled. After the cause had been remanded to the court below, the defendant answered the complaint, denying all the allegations of actual fraud, and alleging that the conveyance to her by the plaintiff was made with the intent to vest her with the absolute title to the property. Upon the trial of the cause, judgment was rendered in favor of the plaintiff, and the defendant's motion for a new trial having been denied, an appeal has been taken from that order, but no appeal has been taken from the judgment.

1. Upon an appeal from an order denying a new trial,

this court cannot consider the sufficiency of either the complaint or of the findings to support the judgment. "A new trial is a re-examination of an issue of fact in the same court after a trial and decision" (Code Civ. Proc., sec. 656), and is authorized for the purpose of vacating the former verdict or other decision. (Sec. 657.) The "decision" which may be thus vacated is that which was given upon the original trial of the question of fact (sec. 632), and upon which the judgment is to be entered. The provision that the judgment is to be entered "upon" the decision (sec. 633) implies that it is subsequent to and dependent on the decision. The judgment itself can be reviewed only by a direct appeal (sec. 936) taken after its entry. (Sec. 939.) The proceedings for a new trial are, however, entirely independent of the entry of the judgment, and may be instituted either before or after its entry, and even while an appeal from the judgment is pending, and the motion may be granted even after the judgment has been affirmed on appeal. If granted, the decision is vacated, and, necessarily, the judgment dependent thereon falls with it. (*Spanagel v. Dellinger*, 34 Cal. 476.) "Under our system, from the entry of the verdict or filing of the findings of the court, the motion for a new trial is a kind of episode, or, in a certain sense, a collateral proceeding, — a proceeding not in the direct line of the judgment; for the judgment may be at once entered and even executed, while a motion for a new trial is pending in an independent line of proceeding, which ends in an order reviewable on an independent appeal. The motion may be heard and decided, and an appeal taken on its own independent record, while the proceedings on and subsequent to the judgment may be still regularly going on, and even an independent appeal taken in that line." (*Spanagel* v. *Dellinger*, 38 Cal. 284.) "The question whether the judgment is authorized by the pleadings or findings cannot be agitated on the motion for a new trial, for it is not involved in a re-

examination of the issues of fact. The code has provided
other and sufficient modes for the determination of both
branches of that question, and it is very clear that the
question whether the issues of fact were correctly found
does not depend in any manner on the question whether
a pleading states sufficient facts to entitle a party to the
relief granted by the judgment, or whether the issues as
found sustain the judgment." (*Martin* v. *Matfield,* 49 Cal.
45; *In re Doyle,* 73 Cal. 571.) It follows that as upon
this appeal we can only review the action of the court
below, we cannot consider whether the findings are suffi-
cient to sustain the judgment, and that our examination
of the evidence is limited to a consideration of its suffi-
ciency to sustain the findings of fact.

2. When upon the trial of a cause the court renders
its decision without making findings upon all the mate-
rial issues presented by the pleadings, it is held that
such decision can be reviewed upon a motion for a new
trial. (*Knight* v. *Roche,* 56 Cal. 15.) In such a case
there has been a mistrial, and the decision, having been
rendered before the case has been fully tried, is consid-
ered to have been a decision "against law." It will be
observed, however, that this rule is applicable only in
a case where the issues upon which there is no finding
are "material"; that is, where a finding upon such is-
sues would have the effect to countervail or destroy the
effect of the other findings. If a finding upon such
issues would not have this effect, the issues cannot be
regarded as material, and the failure to make a finding
thereon would not be prejudicial. (*McCourtney* v. *For-*
*tune,* 57 Cal. 619.) If the findings which are made are
of such a character as to dispose of issues which are
sufficient to uphold the judgment, it is not a mistrial or
against law to fail or omit to make findings upon other
issues which, if made, would not invalidate the judg-
ment. If the issue presented by the answer is such that
a finding upon it in favor of the defendant would not

defeat the plaintiff's right of action, a failure to make such finding is immaterial. (*Fontaine* v. *S. P. R. R. Co.*, 54 Cal. 654.) If the complaint, as in the present instance, sets forth two or more grounds for relief, either of which is sufficient to support a judgment in favor of the plaintiff, a finding upon one of such issues is sufficient, and a failure to find upon the other does not constitute a mistrial, or render the decision "against law."

In view of these principles, the failure of the court to make a finding upon the issue of actual fraud is not a ground for vacating its decision, unless a finding upon that issue in favor of the defendant would have the effect to modify or overcome its other findings. Inasmuch as it was held upon the former appeal in this case that the plaintiff was entitled to the relief sought by him, upon the ground of constructive fraud arising out of the breach by the defendant of the confidential relations existing between them, even if no actual fraud had been alleged, the failure to make a finding upon the issue of actual fraud is immaterial. If such finding had been made in favor of the defendant, it would not have impaired the effect of the finding upon the issue of constructive fraud, and if made against her, it would have only given additional support to the judgment.

3. The plaintiff alleged in the complaint "that he had at all times confidence in his said wife, the defendant, and her devotion and fidelity to him, until he returned home" in September, 1886; and that he "was induced to, and did, make" the deed to her, "having confidence in his said wife, the defendant, and in her said representation and promise (to reconvey to him upon request), and relying upon the same." The only denial of these allegations by the defendant is the denial that the plaintiff was induced to make the said deed to her "by reason of any confidence in any representation or promise of this defendant, or relying upon the same."

The relation of husband and wife between the parties is admitted, and also that the plaintiff had at all times confidence in his wife and in her devotion and fidelity to him, and that he made the deed to her relying upon that confidence.    Upon these allegations this court said upon a former appeal (75 Cal. 529; 7 Am. St. Rep. 189): "The relation of the parties to each other, therefore, was confidential in fact as well as in law.    The plaintiff was induced to make the deed by the confidence which he had in his wife, and the belief thereby engendered that she would perform her promise.    But for that he would not have made it.  The betrayal of such confidence is constructively fraudulent, and gives rise to a constructive trust. This is independent of any element of actual fraud."

At the trial the plaintiff testified that in May, 1881, he was about to go to Arizona, to be absent from California for several years, and being solicitous that in case of his death his wife might enjoy this property, went to consult an attorney in reference to the matter, and in consequence of a suggestion by the attorney, he determined to make the deed in question, instead of a will. "I started away from the State House Hotel, on K Street, for the purpose of seeing a lawyer; while I was getting my boots blacked, on J Street, Mr. Addison C. Hinkson came along.    I hailed him, and told him that I was going to Arizona, and the chances were that I might get killed, and I wanted to leave my family safe, and desired him to make my will.    He studied a little while, and said: 'You had better, under those circumstances, make a deed, if you have implicit confidence that your wife will deed it back to you.'   I said, 'My God! if I could not have confidence in my wife, who in the world would I have confidence in?'   I said, 'Certainly, I have the utmost confidence in her.  When can you attend to the matter?' He said, 'Right off.'   I said, 'I will go and get my wife, and come over.'   I had never spoken to her up to this time, or to any human being, about making a will, or

about making a deed.  I went over and got her, and on the way down told her the whole circumstances.  She said to me that I had better not do it, and I said that I would.  Mr. Hinkson stated the whole matter to her, and she said that she did not want me to do it, but that she would deed it back to me.  Mr. Hinkson sat down and wrote the deed, and I gave him a description of the premises; I then signed the deed, and she went back to the State House, and I went to the recorder's office and filed the deed.  When I was on the way down with the defendant to Mr. Hinkson's office she said she did not want me to deed it to her, and she promised to deed it back to me.  She made the same promises in the office of Mr. Hinkson, in his presence.  Mr. Hinkson stated the matter exactly, and advised the making of a deed instead of a will.  It was through Mr. Hinkson that I made the deed instead of the will.  I had intended to make a will."

On cross-examination the plaintiff testified: "The idea of making a will just struck my mind, and I started over to see a lawyer, and called Hinkson to me.  I told him I was coming to see him about making a will, as I thought I might be killed.  He said: 'If you have implicit confidence in your wife, deed it to her'; and I said, 'I have implicit confidence in her.'  When I saw Mr. Hinkson I told him the reason I wanted him to make a will, so that in case of my death the public administrator would not get hold of my property, and squander it; and he then said: 'If you would make a deed they could not get hold of it, and things would go right along, and nobody would touch the property.  But,' he said, 'they might get hold of the will.'  I intended to pass the estate to her, so that in case of my death there would be no administration, and it would be her property, and nobody could take it from her.  I intended the property to be hers in case of my death.  I did that on Mr. Hinkson's advice, and then after I met him I went over and told my wife what I intended to do.  I had made up my

mind to do so before I saw her. I did not wait to get any promise from her. If she had told me she would not give me back the deed when I came back I would not have given it to her at all. I would not have deeded it to her but for her promise. I had made up my mind that if she would agree to give it back to me I would give it to her. I had confidence in her word, and I thought she would do it. She did agree to do it. She told me she would, on the way, and told me in Hinkson's office. When we got to the office, Mr. Hinkson went over the same thing, and she repeated it to me in the office. He told her what he had said to me, and she said then that she would. He told her that I had told him that I was going to make a will, and he had advised me it was better to make a deed, if she would deed it back again, and he stated the reasons. She spoke, and said, certainly she would; but she did not want me to deed it to her at all, and said I had better not do it." Mr. Hinkson, in his testimony, stated: "I said to Mrs. Brison that her husband had said to me that he desired to make a will, and will his property; that he was going to Arizona, and that being a rough country down there, he did not know what might happen to him, and wanted to arrange it so that his wife could have his property in the event of his death; and I asked him the question, Why might he not make her a deed to the property? and he asked me if he could do that; and I said, 'Yes, you can do that if you have implicit confidence in your wife that she will deed the property back to you when you return, and so desire it.' I told her that Mr. Brison had answered me that he had unlimited confidence in her, and was satisfied she would deed it back to him if he returned, and so desired it reconveyed. Mrs. Brison answered me that Mr. Brison knew very well that she would deed it back to him if he asked her to do so. There was some other conversation in which Mr. Brison joined, and Mrs. Brison made the statement: 'Of course, if he wanted her

to deed it back to him, she would deed it on his return.'
Whereupon I drew a deed, and Mr. Brison signed it, and
I took the acknowledgment and returned it to Mrs. Bri-
son, and I think she gave it to Mr. Brison to be placed
on record."

Upon the evidence on this subject, the court, after
finding the intention of the plaintiff to go to Arizona,
further found: "Upon coming to said determination,
plaintiff at first, in view of the personal risk and dangers
of said proposed undertaking, intended and proposed to
make a will, and thereby to bequeath and devise all his
estate, real and personal, to the defendant, and for the
purpose of having such will prepared, plaintiff consulted
an attorney at law, and informed him of his said inten-
tion and desire, and thereupon said attorney advised him
that the expense of probating such will, as well as the
trouble of administering upon his estate, to his wife, the
defendant, could be saved by making a deed absolute in
form to her, if he had confidence in her, and believed
that she would reconvey the property to him on his
return from Arizona, if he should return home alive.
Thereupon the plaintiff proposed to his said wife, the
defendant, to make a deed absolute in form to her for
said lands upon condition that she would reconvey the
same to him if he should return home and request the
same; that thereupon, in the presence of said attorney,
the said defendant represented to and promised the
plaintiff that if he would make and deliver to her a deed
absolute in form for said land, she would, upon his re-
turn, if he returned from Arizona, or upon his request,
convey the land back to him; and the said plaintiff then
and there, having confidence in his said wife, the defend-
ant, and in her said representation and promises, and
relying upon the same, and to save the expense of pro-
bating such proposed will, and of administration upon
his estate in the event of his death while absent, was in-
duced to and did make a deed absolute in form of said

land to the defendant, instead of making said will, upon the condition, and with this distinct understanding between them, that if he should return from Arizona, the defendant would convey back to him the said land."

It is alleged on behalf of the appellant that this finding is not justified by the evidence, inasmuch as it is in effect a finding that the conveyance was made in pursuance of an agreement therefor, resulting from negotiations between the parties, wherein the plaintiff was induced to execute the deed by reason of some act of persuasion on the part of the defendant, whereas the evidence established that the conveyance was a voluntary act on the part of the husband, coupled with a mere promise on the part of the wife that she would reconvey to him on his return from Arizona.

It may be conceded, as is claimed by the appellant, that the evidence of a verbal agreement between husband and wife that will create a constructive trust should be clear, satisfactory, and conclusive; but it must also be conceded that whether the evidence in any case is of this character must be determined by the trial court, and that this court must accept the determination of the trial court thereon as conclusive. In determining whether a finding is justified by the evidence, it is necessary to take into consideration all of the evidence, rather than certain disconnected portions thereof. The finding of the trial court, when brought here on appeal, is to be deemed correct, rather than erroneous, and it is incumbent on the appellant to point out the error and show the particulars wherein it is not supported by the evidence; otherwise it will be upheld by this court. If the language of a finding is susceptible of different constructions, one of which is supported by the evidence, and the other not, this court will give to the language that construction which finds such support, rather than a construction which would have the effect to defeat the finding.

It clearly appears from the evidence herein that it was not the purpose of the plaintiff, by the conveyance which he then executed, to make the defendant the absolute owner of the property conveyed to her, but that his sole purpose was to place it temporarily in her name to be held in trust for him until his return from Arizona; and that only in case of his death before such return was she to have the beneficial enjoyment of it. His statement, "I intended to pass the estate to her so that in case of my death there would be no administration, and it would be her property, and nobody could take it from her," must be read in connection with his statement immediately following: "I intended the property to be hers *in case of my death*"; and the additional fact must also be considered that the original purpose in his mind was to make a will in her favor, and that this purpose was changed, upon the suggestion by his attorney, that the object he had in view in carrying out this purpose would be as well effected by making a deed to her, if he had implicit confidence that she would deed it back to him. The confidence which he had in his wife was the inducement which led him to place the property in her name. The clause, in the finding, that the plaintiff was "induced" to make the deed to his wife does not necessarily imply any *act* of inducement on her part. The court does not find that she did or said anything with the purpose of inducing him to make the conveyance,— its finding being that the plaintiff "was induced" to make the conveyance by reason of the confidence which he had in her, and in her representation and promises, and that his purpose in making it was to enable her in case of his death to come into the immediate enjoyment of the property. The fact that as soon as he made this purpose known to her she advised against it, and said that she did not wish him to do it, but that she would deed it back to him, and that, later in the day, when Mr. Hinkson

recounted to her the interview between himself and her husband, she answered him that "Mr. Brison knew perfectly well that she would deed it back to him if he asked her to do so," was calculated to deepen the confidence which their relations justified him in reposing in her. This promise on her part to reconvey is not to be considered as the consideration upon which the plaintiff agreed to make the conveyance, but rather as an assurance on her part that the marital confidence which he reposed in her was not misplaced; and the "condition" named in the finding, upon which the conveyance was made, is to be regarded rather as the expectation springing from such confidence, than a limitation upon the estate which the defendant was to receive by the conveyance. While these acts, if the plaintiff had been dealing with a stranger, might not create an enforceable trust, yet with his wife they did; and her subsequent refusal to reconvey was not merely the breach of an agreement, but was the betrayal of a confidence, and the violation of a trust, constituting a constructive fraud, which a court of equity will remedy. The influence which the law presumes to have been exercised by one spouse over the other is not an influence caused by any act of persuasion or importunity, but is that influence which is superinduced by the relation between them, and generated in the mind of the one by the confiding trust which he has in the devotion and fidelity of the other. Such influence the law presumes to have been undue, whenever this confidence is subsequently violated or abused. (Civ. Code, sec. 1575, subd. 1.)

Reading the evidence in the light of the relations existing between the plaintiff and the defendant, and of the confidence which the plaintiff at all times had in his wife, and in her devotion and fidelity to him, until her refusal to reconvey the property to him, we think that the finding of the court is fully justified; and its order denying a new trial is affirmed.

McFARLAND, J., DE HAVEN, J., SHARPSTEIN, J., PATER-SON, J., and GAROUTTE, J., concurred.

BEATTY, C. J., being disqualified, did not participate in the foregoing opinion.

Rehearing denied.