[L. A. No. 990.   In Bank.—November 28, 1902.]

FARMERS AND MERCHANTS' BANK OF LOS ANGELES, Respondent, v. MARIA JESUS DE SHORB, Appellant.

FORECLOSURE OF MORTGAGE—HUSBAND AND WIFE—JOINT EXECUTION—FINDINGS.—In an action to foreclose a mortgage upon the wife's separate property, which, together with the note secured, were jointly

executed by the husband and wife, findings upon sufficient evidence that the note and mortgage were executed freely and voluntarily by the wife, for a valuable consideration; that she did not execute the note as surety for her husband; and that it has not been paid,— are sufficient to justify a foreclosure of the mortgage against her.

ID.—POWER OF MARRIED WOMAN TO CONTRACT—POLICY OF LAW.—It is the policy of our law to treat a married woman as competent to contract, and of equal dignity with man, as to her separate property and her dealings with it; and she may mortgage her separate property for the debts of the husband.

ID.—SURETYSHIP—BURDEN OF PROOF.—Under section 2832 of the Civil Code, the burden of proof is upon a person claiming to contract as surety upon a joint note, to aver and prove the fact of suretyship, and also that the payee of the note not only knew of that fact, but consented to deal with such person in that capacity, and not as a principal.

ID.—CONFIDENTIAL RELATION OF HUSBAND AND WIFE—PRESUMPTIONS INAPPLICABLE TO BONA FIDE MORTGAGEE.—The presumptions of want of consideration and of undue influence which apply to transactions between husband and wife, on account of the confidential relation subsisting between them, are inapplicable to a creditor who takes a joint note and mortgage from them for the amount of existing indebtedness, without notice of any undue influence exercised by the husband over the wife. Such mortgagee is neither a trustee nor a beneficiary within the meaning of section 2235 of the Civil Code.

ID.—PRESUMPTIONS OVERCOME BY PROOF.—If it be conceded that the presumptions applicable between husband and wife are applicable to their joint note and mortgage to their creditor, such presumptions are overcome by full proof of an adequate consideration, and that the wife executed the note and mortgage freely and voluntarily.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

Anderson & Anderson, for Appellant.

.Transactions between persons occupying fiduciary relations are presumably invalid. (2 Pomeroy's Equity Jurisprudence, secs. 955, 956, 957; 3 White & Tudor's Leading Cases, 3d Am. ed., p. 141; *Jennings* v. *McConnel*, 17 Ill. 148; *Greenfield's Estate*, 14 Pa. St. 489; *Ross* v. *Conway*, 92 Cal. 632, 635, 636.) The same presumption applies where husband and wife are parties to a contract. (Civ. Code, secs. 158, 2335; *Alexander*

v. *Bouton,* 55 Cal. 15; *Brison* v. *Brison,* 75 Cal. 528;[1] *Jackson*
v. *Jackson,* 94 Cal. 446; *White* v. *Warren,* 120 Cal. 322; *Di-
mond* v. *Sanderson,* 103 Cal. 102; *Boyd* v. *De La Montagnie,*
73 N. Y. 498;[2] *Darlington's Appeal,* 86 Pa. St. 512;[3] 27 Am.
& Eng. Ency. of Law, p. 439; *Witbeck* v. *Witbeck,* 25 Mich.
442.) A creditor who takes with knowledge of the confiden-
tial relation is affected presumptively by the equity of the
wife against the husband, and has the burden to overcome it.
(*Bainbridge* v. *Browne,* 18 Ch. Div. 196, 197; *Gale* v. *Wells,*
12 Barb. 84; *Noble's Admr.* v. *Moses,* 81 Ala. 530.[4])

John S. Chapman, and Graves, O'Melveny & Shankland,
for Respondent.

Mrs. Shorb was an apparent principal, and has not sus-
tained the requisite burden of proof. (*Farmers' Nat. Gold
Bank* v. *Stover,* 60 Cal. 392; *Harlan* v. *Ely,* 55 Cal. 340;
*Leeke* v. *Hancock,* 76 Cal. 127, 130; *Chase* v. *Evoy,* 58 Cal.
348; *California Nat. Bank of San Diego* v. *Ginty,* 108 Cal.
148, 150-151.) A married woman may mortgage as well as
alienate her real estate by joining her husband in the con-
veyance and making due acknowledgment, and this, too,
though no consideration pass to her thereby. (*Eaton* v.
*Nason,* 47 Me. 132; *Swan* v. *Wiswall,* 15 Pick. 126; *Whit-
ing* v. *Stevens,* 4 Conn. 44; 1 Hill on Mortgages, 272;
*Demarest* v. *Wynkoop,* 3 Johns. Ch. 144;[5] 2 Kent's Com-
mentaries, 167; *Siter* v. *McClanachan,* 2 Gratt. 280; *Phil-
brooks* v. *McEwen,* 29 Ind. 347; *Moore* v. *Titman,* 33 Ill. 358;
*McFerrin* v. *White,* 6 Cold. 499; *American etc. Ins. Co.* v.
*Owen,* 15 Gray, 491.) So also the settlement and extinguish-
ment of a pre-existing debt constitutes a valuable considera-
tion for the sale or assignment of property, and also for the
making of a new note, and this as well to the wife joining
the husband in the execution of the note as the husband him-
self. (*Hart* v. *Church,* 126 Cal. 471, 480;[6] *Gassen* v. *Hen-
drick,* 74 Cal. 444; *Frey* v. *Clifford,* 44 Cal. 335; *Schluter* v.
*Harvey,* 65 Cal. 158; *Robinson* v. *Smith,* 14 Cal. 99; *Payne* v.
*Bensley,* 8 Cal. 260;[7] *Lyon* v. *Robertson,* (Cal.), 59 Pac. 990.)

[1] 7 Am. St. Rep. 189.      [5] 8 Am. Dec. 467.
[2] 29 Am. Rep. 198.         [6] 77 Am. St. Rep. 195.
[3] 27 Am. Rep. 726.         [7] 68 Am. Dec. 318.
[4] 60 Am. Rep. 175.

Threats to commit suicide to induce a wife to execute a mort-
gage for a relative's benefit do not afford ground for avoiding
the mortgage.   (*Metropolitan Life Ins. Co.* v. *Meeker,* 85
N. Y. 614; *Wright* v. *Remington,* 41 N. J. L. 48;[1] *Remington*
v. *Wright,* 43 N. J. L. 451; *Lefebvre* v. *Dutruit,* 51 Wis. 326.[2])

THE COURT.—Action to foreclose a mortgage.   Plaintiff
has judgment, from which and from the order denying a new
trial this appeal is taken.   The court found, as to the note and
mortgage, that on March 24, 1896, J. de Barth Shorb and
appellant, who were husband and wife, executed their joint
and several promissory note to plaintiff for the sum of $164,-
000, and at the same time jointly executed the mortgage upon
which this action is brought, for the purpose of securing the
same; that the note and mortgage were executed freely and
voluntarily by appellant, and for a valuable consideration;
that appellant did not execute the note as surety for her
husband, but it was intended to be, and was, the joint and
several note of the said J. de Barth Shorb and appellant;
and the same has not been paid nor any part thereof.   The
above findings support the judgment, and the evidence sup-
ports the findings.
   The main contention of appellant is, that she signed the
note and mortgage as surety for her husband, and by reason
of undue influence, and that plaintiff took the note and mort-
gage with notice that she was such surety, and that the pre-
sumption as to undue influence gave notice to and binds the
plaintiff.   The court not only found against the contention,
but we think the evidence fully supports the finding.   It
appears from the evidence and findings that appellant and
Hellman, the president of plaintiff, had been friends from
early youth.   The husband of appellant, J. de Barth Shorb,
was practically without property at the time of his marriage
with appellant, and the property which was controlled and
managed by appellant and her husband during their marriage
and prior to his death was principally her separate property.
Hellman, as president of plaintiff, extended to appellant and
her husband many favors in the way of loaning them money,
at appellant's urgent request.   All the mass of letters and
correspondence contained in this record shows that appellant

[1] 32 Am. Rep. 180.          [2] 37 Am. Rep. 833.

always had the utmost confidence in the friendship, integrity, and business ability of Hellman. In March, 1884, appellant and her husband went to the business office of plaintiff and executed their joint and several note for $25,000, which amount was paid to them for the purpose of enabling the husband of plaintiff to purchase certain stock in the San Gabriel Wine Company. This note, with interest due, and an overdraft due, by appellant's husband, afterwards amounted to $28,000, for which a new joint and several note was executed and the old note canceled. In October, 1887, there was due plaintiff for sums advanced to appellant's husband, and in satisfaction of a previous note of the husband, the sum of $51,898.23, for which amount the appellant and her husband executed their joint and several note, and, to secure the same, they executed a deed of trust to Hellman for a portion of the lands involved in this suit. When appellant and her husband came to plaintiff's bank and the latter note was presented to appellant for her signature, and before she signed, she retired with her husband to a window and in a low tone of voice protested to her husband against signing the note, saying that she had already involved herself on his account, and that she was fearful of the consequences of signing the note. Her husband said to her that she might do as she pleased; that he had promised Hellman that she would sign it; that if she did not sign it she would have to take the consequences, and that he could not live to bear the disgrace. The above conversation was not in the presence or hearing of Hellman or any officer of plaintiff, and plaintiff never had any notice or knowledge of such conversation. After the conversation, and without further objection, appellant signed the note, and as security conveyed to Hellman a tract of land. She acknowledged the deed to this land before a notary public, separate and apart from the husband, as certified by the notary, who made her acquainted with the contents of the instrument, and she acknowledged that she executed the same and did not wish to retract such execution.

In February, 1889, the appellant and her husband executed a mortgage upon certain real property—including a large part of that here involved—to secure a loan negotiated with Balfour, Guthrie & Company by the husband for $60,000. In December, 1887, the appellant individually procured a

separate loan from plaintiff, and agreed that certain collaterals held by plaintiff should be additional security for said sum. In March, 1890, in settlement of the prior notes and indebtedness, appellant and her husband executed their joint note for $85,000, and at the same time executed a mortgage to secure the same upon the property described in the decree herein.

Without going into further details as to other transactions, it appears that in March, 1892, the appellant and her husband executed to plaintiff their joint note for $117,500. The items going to make. up the said note were as follows:—

"The note of herself and J. de Barth Shorb, of
  date March 17, 1890...................... $85,000.00
Note of the appellant, Mrs. Shorb, dated September 26, 1891........................    3,000.00
Note of appellant, dated September 18, 1891      500.00
Interest on the above......................    3,230.14

Total indebtedness discharged............ $91,730.14
Balance left to her credit..................   25,769.86

  Total..........  ....................$117,500.00"

This note was secured by mortgage upon the property described in the decree of foreclosure. Finally, on March 24, 1896, the statement of the amount due by appellant and her husband to plaintiff was as follows:—

"Note of herself and husband of March 1, 1892,
  secured by mortgage....................$117,500.00
Note of July 13, 1893, of Mrs. Shorb........    5,000.00
Note of Mrs. Shorb, dated June 12, 1895, secured by certain collaterals..............   10,800.00
Note of Mrs. Shorb for....................       36.99
Interest on above sums....................   47,627.00

  Total indebtedness paid off.............$180,963.99
Balance left to her credit with plaintiff after
  paying the above........................    1,673.00

  Total.......  ......  ................$182,636.99"

For the above sum two notes were given,—one for $18,-636.99, secured by collaterals, and the one upon which this action is brought for $164,000, secured by the mortgage herein described. It will thus be seen that the transactions leading up to the note in contest cover many years.

In April, 1896, J. de Barth Shorb died intestate, leaving no estate. This action was commenced in January, 1899. No claim is made as to the fact that the amount of the note is the correct sum that was due by appellant and her husband to the plaintiff at the time of the execution of the note and mortgage. It was never claimed by appellant during the lifetime of her husband nor prior to the commencement of this action that she executed the note and mortgage by reason of the undue influence of her husband. It is now claimed that she executed the note by reason of undue influence, of which the plaintiff had notice, and that she was a surety as to a large part of the note, of which fact the plaintiff also had notice. In other words, the contention of appellant is, that the joint and several note executed by herself and husband to plaintiff was executed by her as surety, and under such circumstances that it is void as to the indebtedness of her husband. If such rule should be declared law, it would make a radical change in the business of banking and loaning money. If appellant's contention is correct, the joint note, signed by the husband and wife for money advanced to either or both of them, with no notice to the party advancing the money of any coercion or undue influence on the part of the husband, would nevertheless be void as to the wife unless the holder of the note should prove affirmatively that the wife was not in any manner influenced by the husband to sign the note. The party advancing the money might act in the utmost good faith, and yet if the wife should testify that while alone with her husband, and with no knowledge of the party advancing the money, she was unduly persuaded to sign the note or other security, the transaction might be declared void. The money might be retained for years, and used for the support and education of the family, and yet the wife escape liability by swearing to facts which could not be controverted. Such is not the law. To allow such rule would be to treat a woman as an infant or as *non compos mentis.* It is the policy of our law to treat a married woman as com-

petent to contract, and of equal dignity with man as to her separate property and her dealings with it. In the case at bar there is no claim that the appellant was not of sound mind. On the other hand, she had the control and management of a large estate. She borrowed in her own right large sums of money and drew checks into the hundreds of thousands of dollars. Her husband does not appear to have been a very successful business man, but she never during his lifetime repudiated any act of hers by which he was benefited. She will not now be allowed to do so under the circumstances of this case. It is provided in the Civil Code (sec. 2832) as follows:—

"One who appears to be a principal, whether by the terms of a written instrument or otherwise, may show that he is in fact a surety, except as against persons who have acted on the faith of his apparent character of principal."

In *Farmers' National Gold Bank* v. *Stover*, 60 Cal. 392, this court in construing the above section, said:—

"The allegation of the answer is, that the defendants executed the note as sureties of Stover, and for his accommodation, which fact the plaintiff well knew. That is not an issuable averment that the defendants contracted with the bank at the time of the execution and delivery of the note in the capacity of sureties for their co-obligor. The mere fact that the bank knew that the relation of principal and surety existed between them and Stover does not in itself show that the bank consented to deal with them in the capacity of sureties. According to the face of the note, the bank dealt with them as principals only; for as such they apparently executed and delivered the note. If in fact the bank dealt with them in a different capacity,—as sureties, and not as principals,—it is incumbent upon them where they seek under section 2832 of the Civil Code to set up as defense to an action upon the note that they executed it as sureties, to aver and prove that the payee of the note not only knew of the fact of suretyship between them and their co-obligor, but consented to deal with them in that capacity. That all the parties to a contract must agree upon the same thing in the same sense. (Civ. Code, sec. 1580.) In the absence of issuable averments of fact showing such a contract between them and the plaintiff, the pleading is demurrable." (See, to the same effect,

*Harlan* v. *Ely,* 55 Cal. 340; *Chase* v. *Evoy,* 58 Cal. 353; *Leeke*
v. *Hancock,* 76 Cal. 129; *California Nat. Bank* v. *Ginty,* 108
Cal. 148.)

It is the well-settled rule that a married woman may mort-
gage her separate property for the debts of the husband. (2
Kent's Commentaries, marg. p. 167, note *a; Connecticut Life
Ins. Co.* v. *McCormick,* 45 Cal. 580; *Goad* v. *Moulton,* 67 Cal.
539; *Bull* v. *Coe,* 77 Cal. 56;[1] *Swan* v. *Wiswall,* 15 Pick. 126.)

It is earnestly urged that as section 158 of the Civil Code
makes transactions between husband and wife subject to the
general rules which control the actions of persons occupying
confidential relations with each other, as defined by the title
on trusts, and as section 2235 of the Civil Code, under the
title on trusts, provides, "All transactions between a trustee
and his beneficiary during the existence of the trust, or while
the influence acquired by the trustee remains, by which he
obtains any advantage from his beneficiary, are presumed
to be entered into by the latter without sufficient considera-
tion, and under undue influence," that this case comes within
the true intent and meaning of the said sections. The case,
in our opinion, does not involve a transaction between a trus-
tee and his beneficiary within the meaning of section 2235.
It involves a transaction between plaintiff on the one side
and the parties who occupied confidential relations with each
other on the other side. The plaintiff was not a trustee, nor a
beneficiary, within the meaning of said section. The trans-
actions between husband and wife are not material here, un-
less we hold that plaintiff was a trustee or beneficiary. If it
be conceded that the section applies to the note and mortgage
in controversy here, and that appellant is the beneficiary,
then the transaction is presumed to be without consideration
and under undue influence. There is no question but that the
consideration is fully proven.

This dispenses with all presumptions as to the consideration.
If we then begin with the presumption that the transaction
was the result of undue influence, the finding of the court is,
that appellant executed the note and mortgage freely and
voluntarily, and the finding is fully supported by the evi-
dence.

There is no pretense that Hellman, or any officer of the

[1] 11 Am. St. Rep. 235.

corporation, knew of any undue influence. There is no suggestion that at the time the note involved here was given that appellant signed it with reluctance. The statement being made to her of the entire indebtedness of herself and husband, and the amount being placed to her credit, after she voluntarily signed the note and mortgage, entirely overcomes any presumption of undue influence. Appellant does not say that at the time of the making of this note she was acting under any undue influence. The conversation she had with her husband at the window, when she objected to signing, relates entirely to the $51,000 note. This was in October, 1887, nearly nine years before the note in controversy was given, and nearly twelve years before this suit was commenced. Even as to the $51,000 note the evidence of appellant does not show the exertion of such undue influence as destroyed her will and made the transaction void. She testified that her husband was a man of strong will; that after signing the $51,000 note she never made any serious objection to signing anything, ''because I had become so much involved that I felt that I had to do all that I could—that I had assumed those things, or had signed those notes, and we—he was trying to gain time all the time, hoping to pay off all the indebtedness in his own way, and wanted my assistance to help him do so. . . . To me he was always pleasant—always pleasant to me. My husband was never anything but a gentleman to me. . . . He never coerced me or forced me to do anything, except in the most gentlemanly and persuasive manner. Whatever he asked me to do he persuaded me to do.''

In the face of this testimony we are asked to presume that the transaction in question was entered into under undue influence. To so hold, would be to hold that if a husband in a gentlemanly and persuasive manner asked his wife to join him in a note to a bank, and the bank knew nothing as to the husband's ''gentlemanly'' request, the note would be void for undue influence.

The court found that the trust deed to one Alexander was never delivered with intent to take effect, and was never recorded. The finding is fully supported by the evidence. The facts that the father of appellant, when objections were made to the trust deed, made a different one conveying the

property to appellant absolutely, that the trustee never entered into possession or made any claim to the property, that appellant always enjoyed it and claimed it as her own, show that the idea of the deed of trust was never carried out.

The findings cover all the material issues.

We have examined the other alleged errors, but find nothing that would justify a reversal of the case.

The judgment and order are affirmed.

BEATTY, C. J., concurring.—I concur in the judgment of affirmance, but I am not satisfied with that part of the opinion of the court—the concluding portion—which deals with appellant's contention as to the application of sections 158 and 2235 of the Civil Code to the various transactions between these parties. It is no answer to appellant's position to say that these were transactions between the Shorbs on one side and the plaintiff on the other, and to argue that therefore they did not involve transactions between the husband and wife, for the argument is on its face a *non sequitur*. One transaction may, and very frequently does, not only involve, but essentially depend upon, another, and no better illustration of this proposition could be found than in the circumstances attending the transaction of October, 1887, when the Shorbs executed and delivered their joint note for $51,000, secured by appellant's deed conveying her separate property, in satisfaction or renewal of her husband's obligations. The making and delivery of the note and deed was undoubtedly a transaction between them and the plaintiff, but none the less it involved, and was vitally dependent upon, the preliminary transaction between the spouses by which the husband induced his wife to make herself and her property surety for his debt. If it be conceded that the provisions of sections 158 and 2235 of the Civil Code apply to a voluntary transfer of her separate property by a wife to her husband they would not—aside from the question of notice—cease to be applicable as soon as the husband had conveyed the property to a third person. If the husband had obtained the property by the exercise of undue influence, and his grantee took with notice, either actual or constructive, of that fact, he would hold the property subject to the same trust which attached to it in the hands of the husband. In other words, he would not be al-

lowed to keep it, but would be compelled on her demand to reconvey it to the wife.

And, upon the same principle, if a wife should be induced by the fraud of the husband to hypothecate her separate property to secure his antecedent debt, and the creditor had notice of the fraud, he could not enforce his lien, for he would be *particeps criminis,* and would not be allowed to profit by his own fraud. Therefore, if the code provisions apply to the transaction by which a husband induces his wife to convey her property as security for his debt, they necessarily apply to the transaction in which the creditor receives the security if he has notice, either actual or constructive, of any fraud or imposition practiced by the husband in procuring the wife's consent.

If these views are sound, and they seem to me to be indisputable, the opinion of the court fails to meet the propositions so ably and fully presented in the brief of appellant—for it is not held that the code provisions do not apply to the transaction between the husband and wife, and the contention of appellant that although Hellman, who conducted the business in behalf of the plaintiff, had no actual notice of the means by which Shorb induced his wife to encumber her estate, he did have constructive notice, is practically ignored.

It is indeed said in the opinion of the court that the consent of Mrs. Shorb to the transaction of October, 1887, was not procured by undue influence, but the decision is not placed on that ground, and I hardly think this court would commit itself to the proposition that undue influence has no part in such a transaction as is found by the superior court and disclosed by the evidence in this record. A husband, entirely without means to meet his existing obligations, and pressed for payment, informs his creditor that his wife will become his surety if the credit is extended. Papers are all prepared in pursuance of this understanding, a joint note and a trust deed of her separate property. She is then brought into the presence of the creditor and shown the papers she is expected to sign. To her husband she expresses her unwillingness to comply and her alarm at the risk she is asked to assume. He tells her in effect to make her choice between two alternatives, —that she must take the risk, or he will not live to endure the disgrace involved in her refusal. Compelled to an immediate

decision, without any opportunity for reflection, and in the
first access of feeling occasioned by so startling a threat, she
signs and acknowledges the papers. Would any one contend
that if Mr. Hellman had been actually aware of these circum-
stances he could have enforced a security so obtained? If
such contention were made, I think this court would hesitate
to sustain it.

But the superior court finds, and the finding is sustained by
the evidence, that Hellman had no actual knowledge of this
colloquy between the husband and wife, which was conducted
in a low tone of voice and out of his hearing, and the only
question is whether he can be charged with constructive
notice of the kind of undue influence actually exerted.

As to this point—and it is in my opinion the most impor-
tant point in the case—the position of appellant is, that every
transaction between husband and wife by which the former
obtains any advantage is *prima facie* fraudulent, because
by the express terms of the statute it is presumed that the
advantage was obtained without consideration and by the
exercise of undue influence, and therefore the transaction
between the spouses being *prima facie* invalid,—made so by
law, of which no man can plead ignorance,—every person
dealing with the husband in respect to the thing obtained
from the wife is not only charged with notice of any fraud
that was actually practiced, but is subjected to the burden of
proving that in fact the transaction was fair and free from
any imputation of undue influence. These propositions are of
vital importance to the case, and must be disposed of in order
to decide it.

In reaching my own conclusion that the judgment and
order of the superior court should be affirmed, I assume that
the provisions of sections 158 and 2235 of the Civil Code do
apply to the act of a wife in mortgaging her separate estate
to secure her husband's debts, and that the creditor does take
the security with constructive notice that the wife's consent
may have been obtained by that species of undue influence to
which the relation of husband and wife opens the door, but
that there is no constructive notice of other kinds of undue
influence. The relation of husband and wife is one of mutual
confidence, but under our law the husband does not occupy
a position of superiority or authority. The kind, and the

only kind, of undue influence which either is presumed to exercise over the other consists in the abuse of the confidence naturally reposed by one in the other,—that is to say, in concealment or misrepresentation in respect to the matters inducing the particular transaction or its consequences and effects. Under our law a wife is permitted to become her husband's surety, and he is permitted to solicit the favor. When she accedes to his request it may be presumed as against the husband and the creditor that she was not fully advised as to the risk she was taking—that there was misrepresentation or concealment of facts, as to which she was entitled to be advised, or as to the law measuring her liability, but there is no presumption of duress of any kind, or of undue influence exerted by means of threats of injury not amounting to duress.

In this case the undue influence by which Mrs. Shorb was induced to become surety on the $51,000 note was of a kind which Hellman had no reason to suspect, and with notice of which he is not charged, and the only undue influence which could be presumed is disproved by the evidence, which conclusively shows that Mrs. Shorb was fully advised of every circumstance affecting the risk, which, as it then appeared, she was willing to incur.

I have in this discussion singled out the transaction of October, 1887, because it, more nearly than any other of the numerous dealings finally consummated in the note and mortgage in suit, sustains the defense upon which appellant relied, and this renders unnecessary any special reference to prior or subsequent transactions.