[Civ. No., 94.   Third Appellate District.—December 14, 1905.]

LUCINDA HEINRICH (JAMES ASTIL, Executor, Substituted), Respondent, v. CARL A. HEINRICH, Appellant.

APPEAL—DISMISSAL—ABSENCE OF BOND.—An appeal which is not supported by the necessary bond must be dismissed.

FINDINGS—SUFFICIENCY—REFERENCE TO PLEADINGS.—A finding that all of the allegations in a particular paragraph or pleading are true or untrue is sufficient.

TRUSTS — FRAUD OF HUSBAND UPON WIFE—PURCHASER WITH WIFE'S MONEY—INVOLUNTARY TRUSTEE—RESULTING TRUST—BREACH OF FIDUCIARY RELATION.—A husband who fraudulently obtained his wife's money and made purchases of land and personal property therewith, for his own benefit, is an involuntary trustee thereof for her benefit, under section 2224 of the Civil Code; and is also the holder of a trust presumed to result to her from payment therefor with her money, under section 853 of that code; and is further a trustee for her benefit by breach of his fiduciary relation to his wife, which will not permit him to obtain an advantage to himself to her detriment, under sections 158 and 2219 of the same code.

ID.—FRAUD IN PROCURING SETTLEMENT—WANT OF CONSIDERATION—VOID DEED AND BILL OF SALE—PAYMENT WITH WIFE'S MONEY—RESTORATION NOT REQUIRED.—When the husband, in further consummation of his fraud, obtained a settlement from her by fraud and undue influence, and obtained a deed and bill of sale from her by payment therefor with a small part of her own money, a large part of which still remained in his hands, the settlement was without consideration, and amounted to nothing; and the wife, being entitled to the entire property, was not required to restore the void instruments or the money as a condition of setting aside the settlement in equity and enforcing the trust.

ID.—WIFE NCT BARRED BY ACQUIESCENCE OR WAIVER—IGNORANCE OF FACTS—MISREPRESENTATIONS.—The wife was not barred from relief by any act of hers at the settlement, she not having been given full information as to the facts, which were misrepresented by her husband, and the wife was not barred, under these circumstances, by her acquiescence or by a waiver of her rights.

ID.—EVIDENCE—LEADING QUESTION.—A leading question, objected to as such, was properly excluded from evidence.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

Harding & Sargent, for Appellant.

John M. Fulweiler, for Respondent.

McLAUGHLIN, J.—This is an action to enforce a trust. The pleadings and findings are so voluminous that it is impossible to insert more than a brief statement of the vital facts in this opinion. The parties to the action were married in Iowa, November 28, 1902. The defendant represented that he owned a farm in California worth $21,000, and through such representations and expressions of affection for plaintiff he induced her to marry him and come to California to live on his farm. They reached Santa Rosa early in December, 1902. Shortly after their arrival she discovered that his father owned the land, which is the principal bone of contention here. He, however, told her that his parents would sell it to him for $15,000 if $300 was paid upon the purchase price. She gave him a draft for $650 with which to make this payment; he agreeing to return the balance to her. On December 12, 1902. his parents conveyed the land to him for a stated consideration of $15,000. This recital was false, and was inserted in the deed to enable him to cheat and defraud his wife. At the time the deed was executed he paid $300 on the purchase price, gave his father a mortgage for $3,200, and assumed a mortgage for $1,000, held by Mrs. Somers. The sum total of $4,500 thus represented was the real consideration for the deed. Instead of returning the balance of the money to his wife, he abused her for asking for it, and shortly thereafter

indulged in such brutal and abusive conduct toward her that she was compelled to leave him and return to Iowa. In a short time he followed her and by fair promises and false representations induced her to sell her Iowa property for $7,000 and return with him to California. They arrived in Sacramento June 1, 1903, and within one month thereafter, by falsehood, protestations of affection, and fraudulent representations, he had succeeded in obtaining all of her money, amounting to $6,985, under a promise that he would pay off the mortgages on the land, make her a deed conveying one-half thereof, and return the balance of the money to her. He at all times assured her that the land was worth $15,000 and that this sum was the actual purchase price paid. He paid the sum of $4,200 to the mortgagees above mentioned, but met her request for a deed and the return of the money with defiance and abuse. The balance of the money amounting to $2,785 was deposited in a bank in his name. He used a portion of this balance to pay for certain personal property, and was careful to see that she did not visit neighbors nor acquire personal knowledge of the character or value of the land. After procuring her money and refusing to fulfill his promises, he treated her so shamefully that she was compelled to leave him on August 4, 1903. Two days later she went to him and requested that he execute and deliver to her a deed conveying one-half of the land, which had been prepared by her attorney, but he refused to do so, and immediately sent for his attorney. By reason of suffering and mental anguish, resulting from the cruel treatment above mentioned, the plaintiff was distracted and in a nervous mental condition, entirely unfitting her to form any judgment as to the statements and representations of the defendant and his attorney, and that evening, through false and fraudulent representations, and the advice of his attorney, she was prevailed upon to accept $500 and a deed conveying a segregated one-half of the land in full settlement of all transactions between herself and husband. She was also induced to sign an agreement of separation, waiving alimony. The land thus deeded was worth $1,500, and from this it will be seen that under the so-called settlement she was to receive about $2,000 in money and property in return for $7,635 which her husband had fraudulently obtained from her during eight months of married life.

2 Cal. App.—31

At the settlement mentioned she was not represented or advised by her attorney, and her husband's conduct clearly shows that he did not intend that she should have independent advice or aid. It further appears that other money belonging to her was used to defray household expenses and the cost of the honeymoon trip. On November 28, 1902, the unfortunate plaintiff had $1,000 in an Iowa bank and owned property worth $7,000. Eight months later, after receiving many brutal beatings from the husband, who had stripped her of her property, she was again compelled to leave him. He never allowed her to go to the land but once, and then she was permitted to remain there but a few hours. The facts above recited were gleaned from the findings, which disclose, in detail, a perfidious and unconscionable fraud perpetrated by a designing and unscrupulous man, who used the most sacred of human relations as a means to the end he had in view. The court below rendered judgment decreeing that plaintiff was the owner of the real and personal property purchased with her money, and directing that the defendant, or in case of his refusal, the clerk of the court for him, execute and deliver a deed and bill of sale to plaintiff. It was also decreed that the instruments executed by plaintiff at the above-mentioned settlement were fraudulent and void. From this judgment defendant appeals. An appeal was also taken from the order denying defendant's motion for a new trial, but such appeal is not supported by the necessary bond, and hence it must be dismissed.

The first contention of appellant is that the court failed to find on all of the issues of fact. In this connection it is said that a finding that all of the allegations in a particular paragraph or pleading are true or untrue is insufficient. A long line of authorities sustain the opposite view, and we have neither the inclination nor the right to disturb a rule so firmly established. (*Gale* v. *Bradbury,* 116 Cal. 40, [47 Pac. 778]; *Williams* v. *Hall,* 79 Cal. 606, [21 Pac. 965].) The findings cover all the material issues, and hence this contention cannot be sustained.

It is next contended that the findings do not support the judgment. The argument on this point is based on the theory that the facts found do not establish the existence of a resulting or constructive trust, and that in any event plaintiff

should have restored or offered to restore the deed and money received by her before this action was commenced. We do not think this theory can find support in law or logic. "One who gains a thing by fraud, accident, mistake, or undue influence, the violation of a trust or other wrongful act is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Civ. Code, sec. 2224; Pomeroy's Equity Jurisprudence, secs. 1053, 1055, 1056; *Crosby v. Clark*, 132 Cal. 5, [63 Pac. 1022].) When the defendant fraudulently obtained his wife's money and applied it to the purchase of the property in dispute, a trust resulted in her favor. She at once became the equitable owner of the property, and he held the legal title as an involuntary trustee for her benefit. As he obtained an unconscionable advantage, the law creates a presumption of undue influence, and this, in conjunction with his fraudulent and wrongful acts, brings this case squarely within the wholesome rule of equity embodied in the above-cited section of the Civil Code. (*Farmers' etc. Bank v. De Shorb*, 137 Cal. 693, [70 Pac. 771]; *White v. Warren*, 120 Cal. 323, [49 Pac. 129, 52 Pac. 723]; *Brison v. Brison*, 90 Cal. 336, [27 Pac. 186]; Pomeroy's Equity Jurisprudence, secs. 1040, 1052, 1053; Civ. Code, sec. 158.) There is another rule which constitutes the defendant as a trustee holding title to the real property for the benefit of his wife. "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." (*Riley v. Martinelli*, 97 Cal. 575, [33 Am. St. Rep. 209, 32 Pac. 579]; *White v. Costigan*, 138 Cal. 569, [72 Pac. 178]; Civ. Code, sec. 853; Pomeroy's Equity Jurisprudence, secs. 1031, 1037, 1040, 1043, 1044, 1058.)

Aside from any question of fraud, there is still another rule which operates to hold the defendant a trustee. Whenever a husband purchases property with money belonging to the separate estate of his wife, equity regards such purchase as made in trust for the wife. The defendant stood in a fiduciary relation toward his wife, and the law will not permit him to take advantage of such relation for his own benefit and to her detriment. (Civ. Code, secs. 158, 2219; Pomeroy's Equity Jurisprudence, secs. 370, 1049; *Brison v. Brison*, 90

Cal. 336, [27 Pac. 186] ; *Dolliver* v. *Dolliver,* 94 Cal. 648, [30 Pac. 4] ; *Odell* v. *Moss,* 130 Cal. 357, [62 Pac. 555].) It is said that she was his senior and should have known better than to trust him after her confidence had once been abused. But, if she was too credulous, that fact cannot weigh against her under the circumstances shown here. (*Dow* v. *Swain,* 125 Cal. 683, [58 Pac. 271].) If the wisdom of the rules which make him a trustee needs vindication, such vindication is supplied in full measure by the record before us. That record bristles with evidence showing how much a good woman will suffer at the hands of a man who has won her affection and hand. It demonstrates how affection and fear combine to make her subservient to her husband's will. He had blackened her eyes, pulled out her hair, slapped her face, and kicked her time after time. He had lied to and deceived her from the beginning. His promises were made only to be broken, and his general conduct was unmanly and contemptible. Yet when she stood before him, after he had robbed her of her property and happiness, and immediately after he had refused the poor return he had promised, he was able to persuade her to wait on him until 6 in the evening, and made use of the time to get his lawyer on the scene. Even then, distracted though she was through his cruelty, she believed his statements and acted as he desired. The record in its every line shows how she trusted him, and, no matter what her age or his, the law will hold him to the trust, and courts of equity will rigidly enforce the rule which prevents persons standing in a fiduciary relation from retaining property purchased with funds of the *cestui que trust.*

We cannot understand the theory upon which appellant bases his contention that restoration or an offer to restore the deed and money received at their last meeting was indispensable to her right to the relief here sought. All of the land was purchased with her money and he had in his hands at least $1,700 which also belonged to her. He could not fulfill his trust, nor satisfy the demands of equity, by giving her a part when she was entitled to all. The land deeded was hers as a matter of right, and the record abundantly shows that the money he paid her was likewise hers. Viewing this as an action for cancellation or rescission, she was not compelled to restore or offer to restore that which in equity and good

conscience belonged to her, and to which the defendant had no right. "One who rescinds a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain." (*Richards* v. *Fraser*, 122 Cal. 461, [55 Pac. 246].) All she ever received from him in return for her confidence and money was billingsgate and blows, and she certainly was not compelled to restore a portion of her property to his possession before she could bring suit for the recovery of the rest of it. But "rescission is only one of the remedies in cases of fraud, and in cases where real or personal property is thus obtained the most common and familiar relief granted by a court of equity is to convert the party guilty of the fraud into a trustee." (*More* v. *More*, 133 Cal. 493, [65 Pac. 1044]; Pomeroy's Equity Jurisprudence, secs. 369, 375, 1058, 1080.) And the relief granted by the court, namely, a reconveyance of the property, was appropriate to the case and was justified by the facts found. (*More* v. *More, supra.*) The facts found show his influence over her, and this finding of undue influence is emphasized by the confidential relation existing between them. He was in law a trustee for her benefit, and the transaction termed a "settlement" amounted to nothing under the circumstances. "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into without sufficient consideration and under undue influence." (Civ. Code, sec. 2235.) This presumption accords with the facts found, which show conclusively that the outraged wife received no consideration whatever for the surrender of her legal right to all of the property. His condescension in the premises was on a par with the effrontery manifested by him from the time he met her until they parted forever. Nor is she barred from the relief here sought by any act of hers at that last meeting. She was not given full information touching the facts, and did not act with full knowledge of her legal rights. Instead of stating the facts, he continued to misstate them. In lieu of information as to her legal rights, she was told that she would not fare as well if she sought relief in the courts. Under these cir-

cumstances the alleged settlement did not amount to acquiescence or a waiver of her rights. (Pomeroy's Equity Jurisprudence, sec. 1083.)

Waiving respondent's objection to the consideration of the statement on motion for a new trial, the evidence is ample to sustain the findings. There was no error in sustaining the objection to the question asked the witness Trippett. The question was clearly leading, and the objection was as clearly based on that ground. We find no error in the record.

The judgment is affirmed.

Chipman, P. J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 12, 1906.