[Civ. No. 5035.  Third Appellate District.—January 22, 1934.]

CHARLES BURROWS, Respondent, v. RAY BURROWS et al., Appellants.

L. Kenneth Rhodes and Harry B. Ellison for Appellants.

Elwood Bowles and Arthur T. Stollmack for Respondent.

PLUMMER, J.—The plaintiff had judgment in this action brought for the purpose of compelling a reconveyance from the defendants of certain real and personal property. From this judgment and an order denying a new trial, the defendants appeal. █ As no appeal lies from an order denying a new trial, that portion of the appeal is hereby dismissed.

The complaint in the action and the findings of the court are to the effect that for many years prior to the second day of April, 1929, the plaintiff and his wife, Agnes Burrows, now deceased, were the owners of the real property described in the complaint, being a certain dwelling-house situate on a lot of land in the city of Los Angeles, and including the personal property therein; that prior to the second day of April, 1929, the plaintiff and his wife had borrowed money,

and given as security a trust deed on the real property herein referred to; that the money was due for which the trust deed had been executed, and there was likelihood of foreclosure proceedings. At the same time it appears that there was more or less of a disagreement existing between the plaintiff and his wife, and that the wife refused to join in the execution of any papers necessary to refinance the loan for the security of which a trust deed had been given. Following this the record shows, according to the complaint and the findings of the court, that the plaintiff and his wife executed and delivered to the defendants a deed to the property involved in this action, upon the express promise that after the loan existing against said property had been refinanced, a reconveyance would be executed in favor of the plaintiffs.

It further appears from the record that Agnes Burrows, the wife of the plaintiff, died intestate during the month of August, 1929; that the defendants refinanced the loan referred to by borrowing money and executing a trust deed to secure the repayment thereof. The amount of the money borrowed by the defendants in refinancing the encumbrance theretofore existing upon the premises involved herein appears to have been the sum of $2,500, $500 of which was used in paying off street assessment liens, etc. No money was paid to the plaintiff, or to the plaintiff's then living wife, in consideration of the conveyance. There does appear some testimony to the effect that Ray Burrows stated that he would give a trust deed to the plaintiff and also to the plaintiff's wife, in the sum of $1,000.

Upon this appeal it is contended—First: That the court should have granted defendants' motion for nonsuit; and second: That the evidence is insufficient to support the findings of the trial court. ▮ We need not give any consideration to the denial of the motion for nonsuit because if the evidence submitted to the trial court for its consideration supports its findings, the judgment should be affirmed. (2 Cal. Jur. 1025; *Long Beach Brick Co.* v. *De Dodson*, 104 Cal. App. 99 [285 Pac. 382].)

The testimony of the plaintiff is to the following effect: That the defendant, Ray Burrows, came to him some time during the month of February or March, 1929, and said that his mother (meaning the plaintiff's wife) was willing to

deed the place over to Effie and himself, and then he would deed it back to the plaintiff any time the plaintiff wanted it. The plaintiff testified that he refused, and nothing was done until later. In the latter part of March he stated that the defendant, Ray Burrows, came to him at Inglewood, and said: "Dad, Agnes (meaning the plaintiff's wife) is willing to sign the place over to Effie and myself, and we will deed it back to you any time you want it." The plaintiff testified that he refused this request; that later Ray Burrows came back to him and said: "Father, do you think for one minute that I would beat you out of one penny? I don't want you to lose one penny. Mother is on her high horse, and if you will deed the property over to Effie and me, I will deed it back any time you want it." The plaintiff testified that he said: "Well, if you pay out any money on it, I am willing to refinance and pay it back."

The plaintiff testified that Ray Burrows then said: "We will give you $1000.00 to go on, and we will go on there and live in the house. We agreed on that, and then he tried to get the money to give me the $1000.00 and he could not get it." The plaintiff further testified as follows: "I let it lay right there until Ray came down and said she (referring to plaintiff's wife), wanted to deed it over to him and said: 'Dad, if you will do that, Effie and I will deed it back to you; we don't want to see you lose your property, and you will lose it if you don't. She (referring to the plaintiff's wife) is willing to turn it over to you, and we will deed it back to you any time.' " There was further testimony of the plaintiff to the same effect, including, also, the statement of the fact that the plaintiff was not able to work.

Earl Burrows, a son of the plaintiff, testified that the defendant told Dad (meaning the plaintiff): "If you will deed that place over to him, he will give it back."

Myra E. Bowles, a sister of the plaintiff, testified as follows: "And Ray wanted me to advise Charlie, and tried to get Charlie to deed over the property to him. He said that was the only way to save it for them because his mother would not sign the papers for refinancing, and that if they would deed it to him, he would deed it back to Charlie after they had refinanced it, and saved it for them."

Upon cross-examination this witness further testified: "He (referring to Ray Burrows), wanted to persuade me to

persuade my brother to deed the property to him so that he could save the property for them."

Fred Gardner, son-in-law of the plaintiff, testified as follows: "Well, the only thing Ray says, he wishes the folks could get along better so that they could settle their agreements or disagreements without having him come into it, and I said, 'How are you going to do it?' He said, 'Well,' he says, 'he is going to have the property deeded over to him by his mother and father, and he is going to give his mother a trust deed for $1000.00, and give his father a trust deed for $1000.00, and that would give him a hold on the property, and then, at any time they could get together, wanted the property back, he would deed it back to them and they could pay him what he was out.'" This witness testified to a further conversation with Ray Burrows to the effect that after the property had been deeded over to him he, Ray Burrows, stated, in answer to a question, that he had not given to either his mother or father a trust deed, and did not care if they never received it. One or two other witnesses testified to occurrences similar to those herein related.

There was also testimony to the effect that the real estate involved was of the value of between $6,500 and $7,000. The court found the value of the property at $7,000. There was further testimony to the effect that the plaintiff relied upon Ray Burrows for advice. ■■■ Being father and son, a confidential relation existed between the parties. (12 C. J. 421.) The complaint alleges the existence of confidential relations, and this relationship is not denied by the defendants. The defendant, Ray Burrows, testified that his father "always came to him for everything". It was also shown by the testimony that Ray Burrows promised that he would take care of the mother as long as she lived, and likewise, testimony to the effect that the mother paid board to Ray Burrows after the execution and delivery of the conveyance involved in this action. After the taking of possession of the premises by the defendants, the defendants expended thereon several hundred dollars, allowance for which is made in the judgment.

The court found in effect that the conveyance was made to the defendants upon the express promise that reconveyance would be made whenever asked for by the plaintiff,

and as the testimony shows, would be subject to any liens placed thereon in order to refinance the loan heretofore mentioned, and also to reimburse the defendants for such expenditures as should be necessarily incurred by them.

Upon this appeal it is contended that the findings are not supported by the evidence. First: That there is no showing of fraud. This contention, however, appears to be controverted by the testimony. Subdivision 4 of section 1572 of the Civil Code, in defining "fraud" reads: "A promise made without any intention of performing it." If accepted by the trial court as true, the testimony which we have summarized herein is sufficient to lead to the conclusion that the defendant, Ray Burrows, made a promise of reconveyance with no intention of performing the same. Again, that the conveyance was made upon the promise of the defendants to reconvey, and thus created a trust, appears to be without controversy. Under section 2224 of the Civil Code the violation of the promise to reconvey would create what is denominated an involuntary trust. That section, in defining involuntary trusts, reads: "One who gains a thing by fraud, accident, mistake, undue influence; the violation of a trust, etc."

Accepting the testimony as true, it clearly shows the violation of the trust upon which the property was conveyed, and as we have said, a violation of a promise which the court was justified in finding was made without any intention of either present or subsequent performance.

While the deed by which the property was conveyed to the defendants contains a recital of $10, the evidence shows that nothing was paid. The law is so well settled that the consideration can always be inquired into that we need not cite authorities in support thereof. There was a promise and an undertaking on the part of the defendants to refinance the indebtedness then existing for the payment of which the property in question was covered by a trust deed. It does not appear in the record that the defendants subjected any of their own property to any lien in the refinancing operations. All that was done was the taking up of the then existing indebtedness, and the placing of a loan upon the property by way of a trust deed, increased in amount in the sum of about $500 to enable payment to be made of taxes and assessments which appear to have been al-

lowed to go delinquent. The defendants paid no money of their own in their refinancing operations.

It thus appears, according to the findings of the trial court that they received, without consideration, property worth $4,500 in excess of the indebtedness existing thereon. No other property appears to have been owned or possessed by the plaintiffs at the time of the conveyance made by the plaintiff to the defendants. Nor does it appear that the plaintiff had any independent advice.

We find no testimony in the record as to any mental incapacity on the part of the plaintiff, it being simply alleged that he was a man of 68 years of age. However, it does appear in the exhibits, made a part of the record, that the plaintiff was not only uneducated, but blankly ignorant.

We think the following language found in the opinion in the case of *Nobles* v. *Hutton,* 7 Cal. App. 14 [93 Pac. 289], pertinent here: "It is a well-established principle that persons standing in a confidential relation toward others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can show, to the satisfaction of the court, that the person by whom the benefits have been conferred had independent advice in conferring them." (Citing a large number of cases.) Again, in the same opinion, we find the following: "It is a well-settled rule of equity jurisprudence, that all gifts, contracts, or benefits, from a principal to one occupying a fiduciary or confidential relation to him, are constructively fraudulent and void. The court, in such cases, acts upon the principle that if confidence is reposed, it must be faithfully acted upon; if influence is acquired it must be kept free from the taint of selfish interest, and cunning and over-reaching bargains. In this class of cases there is often found some intermixture of deceit, imposition or over-reaching advantage or other mark of positive or direct fraud. But the principle upon which courts of equity act in regard thereto stands independent of any such ingredient, upon a motive of general public policy. Among the relations subject to the foregoing rule are those of parent and child, attorney and client, and principal and agent."

That these rules are more often applied to dealings between mother and son may be admitted, yet from the circumstances appearing in this case, we think the trial court was

correct in concluding that a promise was made to induce the conveyance; that this promise was made without any intention of keeping the same, and therefore, that a trust has been violated.

As to the inferences that may be drawn of undue influence, violations of confidence, etc., arising from transactions between mother and son, we cite the cases of *Piercy* v. *Piercy*, 18 Cal. App. 751 [124 Pac. 561]; *Hillyer* v. *Hynes*, 33 Cal. App. 506 [165 Pac. 718].

██ That an oral promise to reconvey will be enforced is supported by the leading case of *Brison* v. *Brison*, 90 Cal. App. 323 [27 Pac. 186], where a husband conveyed property to his wife upon a promise to reconvey. (*Soberanes* v. *Soberanes*, 97 Cal. 140 [31 Pac. 910]; *Hayne* v. *Hermann*, 97 Cal. 259 [32 Pac. 171]; *Smith* v. *Lombard*, 201 Cal. 518 [258 Pac. 55].) In this latter case the rule is thus stated: "It has been established by a number of decisions in this state that where confidential relations exist between two parties, and one of them executes a conveyance of real estate to another upon a parol promise by the other that he will hold it for the benefit of some third person in whom the grantor is interested, there being no other consideration for the conveyance, a trust arises by operation of law in favor of the grantor or in favor of the third person for whom the property is to be held. It is the violation of the parol promise which constitutes a fraud upon which the trust arises. If made in good faith, and if it is of a continuing nature, the performance of it for a time does not prevent a trust from arising when it is broken and repudiated." (Citing a large number of cases, including those to which we have herein referred.)

The appellant cites cases on the question of gifts, and also cases to the effect that in order to establish a trust, the evidence must be clear and convincing. Without discussing the question as to where the burden of proof would lie on the question of alleged gift, we think the testimony which we have summarized amply justified the court in concluding that the property was conveyed upon a trust, and that the testimony was sufficiently clear to establish the existence of the trust, the promise made of reconveyance, the refusal to reconvey, and, likewise, the intention never to reconvey.

The record further shows that the wife of the plaintiff (now deceased), prior to the conveyance made to the defendants, had refused to sign the papers necessary to be signed in order to refinance the loan existing upon the premises. The testimony shows, and the court should have found, that the defendants refinanced the loan existing upon the premises involved in this action, and in so doing, executed a trust deed as security for the payment, and that the refinancing should be made subject to the payment of the amount of the lien still existing upon the premises involved herein.

It is therefore ordered that finding number 8 be amended to read as follows:

"That it is true that the defendants Ray Burrows and Effie Burrows have expended the sum of $967.83 upon said real property, and also in refinancing the same executed a trust deed for the sum of $2500.00, necessary to be borrowed in order to discharge the liens existing against the premises on April 2, 1929, upon which there is still an unpaid balance."

We are unable to find in the record the exact amount of the unpaid balance due on the trust deed executed by the defendants.

It is also ordered that the second conclusion of law be amended to read as follows:

"That the plaintiff is entitled to a reconveyance of said real property from the defendants, subject, however, to the unpaid balance of the lien existing against said property by reason of the trust deed given in refinancing the indebtedness constituting a lien on said premises on April 2nd, 1929."

It is further ordered that the judgment in this cause be amended by adding thereto the following:

"That the reconveyance herein directed to be made, be made subject to the payment of the unpaid balance of the moneys secured to be paid by the trust deed executed by the defendants in refinancing the indebtedness existing and owing by the plaintiff, constituting a lien upon said premises on the 2nd day of April, 1929."

As so amended, the judgment is affirmed.

Respondent is allowed his costs.

Thompson, J., and Pullen, P. J., concurred.