[Civ. No. 17912. Second Dist., Div. Two. Dec. 12, 1950.]

HENRY A. SPARKS et al., Respondents, v. GORDON T. SPARKS et al., Appellants.

Joseph Scott, J. Howard Ziemann and G. L. McFarland for Appellants.

Walter C. Harbert for Respondents.

WILSON, J.—This action is not, as contended by defendants, for the rescission of deeds to real property signed by plaintiffs pursuant to which defendants assert title, but is

(1) to quiet title to the property covered by the deeds, (2) to obtain a judgment of declaratory relief declaring that the deeds are null and void, and (3) for an accounting of the income received .by defendants from the property and the expenditures made for its upkeep.

Findings of fact and conclusions of law were made in favor of plaintiffs upon which an interlocutory judgment was entered that the deeds in question are null and void and of no force and effect; that defendants have no interest in the property covered by the deeds, and that an accounting be had before a referee to determine the income received by defendants from the property, and the necessary disbursements made by them for upkeep and improvements. A referee was appointed and after his report had been filed findings were made that defendants were not indebted to plaintiffs and again finding that the deeds were null and void and that defendants have no interest in the property. Final judgment was entered in accord with the findings. Defendants have appealed from the interlocutory judgment directing an accounting and from the final judgment.

Plaintiffs Henry and Glen are father and son. Defendant Gordon is another son of Henry, and defendant Carmelita is defendant Gordon's wife. Henry and his wife Mary purchased the property in 1922 and built thereon three houses. They lived on the property during the remainder of their married life. Title to the property was originally in the names of Henry and Mary as joint tenants. Approximately two months before Mary's death Gordon and his wife Carmelita came to live upon the premises, then occupied by Henry, Mary and their son Glen, 9 years of age. Shortly prior to Mary's death she and Henry joined in a deed conveying the property to Gordon and Carmelita without consideration. On the same day the grantees in that deed conveyed the property to Henry and Glen as joint tenants. This procedure was adopted for the purpose of placing the title in joint tenancy in Henry and Glen.

After Mary's death Gordon and Carmelita continued to reside upon the premises, Carmelita caring for the household and assisting in the rearing of Glen. Prior to Mary's death she had handled all the financial transactions for the family; Henry turned over his salary to her, permitted her to collect the rents from the property, and depended upon her to make all payments on the existing mortgage as well as household bills. After Mary's death Carmelita assumed those duties.

From 1935 until 1947 and to a certain extent thereafter Carmelita collected all rents upon the premises, bought the food, paid the bills and prepared the meals, Henry turning over to her approximately one-half of his salary semimonthly as his contribution toward the household expenses and the payment of the mortgage. Henry trusted and relied upon Carmelita and neither asked for nor received an accounting of any of the moneys collected or paid out by her.

In March, 1943, Glen, who was then 17 years of age, enlisted in the United States Navy. Gordon and Carmelita informed Henry that he should execute some papers so as to permit them to manage the property, make the payments and collect the rents, because Glen was going into the service and Carmelita wanted authority to manage the place. No discussion was had with reference to the value of the property, the balance remaining unpaid on the mortgage, the amount of rents, nor the amounts required to be paid on the mortgage. The rents received were more than sufficient to make the mortgage payments and to pay the current taxes. At the request of Gordon and Carmelita Glen came from San Diego to Los Angeles to sign the papers. He was not told what the papers were that he was to sign. The four parties met in an office where Carmelita had been employed and Henry and Glen executed the deed of April, 1943, conveying the property to Gordon and Carmelita. A receipt had been previously prepared by Carmelita acknowledging payment of $500 in full consideration for the execution of the deed. Carmelita had in her possession a cashier's check for $500 which she endorsed payable to Glen and Henry. Neither Glen nor Henry read or understood the documents they signed. Henry was under the impression that they were for the purpose of permitting Gordon and Carmelita to manage the property for him. Neither Glen nor Henry received anything when the deed and receipt were signed.

Carmelita retained the cashier's check after she had endorsed it and in May, 1943, a bank account was opened in the name of Glen Roy Sparks, a minor, with Henry A. Sparks as trustee, and the cashier's check was deposited in that account. Carmelita took Henry to the bank for the purpose of opening the account.

After signing the papers Glen returned to his duties in the Navy and Henry, then 72 years of age, continued to live

upon the property and to turn over half of his salary to Carmelita.

In March, 1947, Glen, who then knew of the deposit of $500 in his name, called Carmelita and said he needed some money. She told him it would be necessary for him to sign some papers before he could get it. Glen came from San Francisco and in March, 1947, went to the bank in the company of Carmelita and Henry where he and Henry executed a second deed and receipt. Glen was given the $500 and Henry received $17.50 interest that had accrued upon the deposit. Carmelita told Glen it was necessary for him to sign the papers before he could get any money. This occurrence was five days after Glen had reached the age of 21 years. Henry joined in the second deed at Carmelita's request and there appears to have been no explanation as to why he was requested to sign it. Neither Glen nor Henry read any of the papers which they signed on the second occasion and executed them on the assurance of Carmelita that they were necessary in order that Glen obtain the money. Neither of them was advised or knew they were signing a deed conveying their interest in the property.

Shortly after the execution of the second deed Carmelita told Henry she would not cook for him any longer and he would have to pay rent to her for the back shed which he had been occupying for a number of years. When Glen was informed of this fact he consulted an attorney and for the first time was advised that all interest of himself and his father had been conveyed to Gordon and Carmelita and that they claimed ownership of the property.

At all times from 1935 until the execution of the second deed in 1947 Carmelita collected the rents from the property, received one-half of Henry's salary and paid all household bills and expenses incurred with reference to the real property.

The deed and the receipt signed by plaintiffs on March 22, 1947, are pleaded *in haec verba* in defendants' answer to the amended complaint. Defendants contend that since the documents are set forth in full in the answer and plaintiffs failed to file an affidavit denying the genuineness and due execution thereof they are precluded from attacking them in any manner.

In making this contention defendants overlook the fact that by reason of section 448 of the Code of Civil Procedure only the ''genuineness and due execution'' of the instruments are deemed admitted. By failing to file an affidavit plaintiffs merely admit that they signed the documents

and that they were delivered to defendants. ▮ They were at liberty to controvert the instruments by evidence of fraud, mistake, undue influence, want of consideration, that they were void because not fairly made or fully comprehended, and by any other defense that would be open if the instruments were the basis of an action. (*Miller* v. *McLaglen*, 82 Cal.App.2d 219, 224-5 [186 P.2d 48] and cases cited.)

The evidence established that Henry was over 72 years of age, knew nothing about the conduct of business transactions, had depended on his wife during her lifetime to make collections and expenditures, and after her death had depended upon Carmelita therefor, and that Glen had reached his majority only five days before he signed the deed. Upon ample, competent evidence the court found that neither of the plaintiffs received any consideration for the deed; that plaintiffs were unfamiliar with real estate transactions and had no knowledge of the effect of the execution by them of the deed; that Gordon and Carmelita knew such fact and that in executing the deed plaintiffs relied upon the trust, faith, confidence and relationship which had existed between plaintiffs on the one hand and defendants on the other.

Defendants maintain there is no evidence to support the finding that they unduly influenced or prevailed upon plaintiffs to execute the deeds in question. ▮ What constitutes undue influence and what constitutes sufficient proof thereof depend upon the facts and circumstances of each particular case. It "is a species of constructive fraud which the courts will not undertake to define by any fixed principles, lest the very definition itself furnish a finger-board pointing out the path by which it may be evaded." (*Longmire* v. *Kruger*, 80 Cal.App. 230, 239 [251 P. 692].) There are certain relations from the existence of which the law will infer special confidence, not only those of husband and wife, parent and child, counsel and client, etc., but in numerous cases where the facts proved will warrant the inference. (*Bradley Co.* v. *Bradley*, 37 Cal.App. 263, 267 [173 P. 1011].) A confidential relation in fact should be the test. ▮ Where a grantor has trust and confidence in the integrity and fidelity of the grantee and the latter takes advantage of the grantor relief will be afforded. (*Steinberger* v. *Steinberger*, 60 Cal. App.2d 116, 122 [140 P.2d 31].) One who holds a confidential relationship will be presumed to have taken undue advantage of his trusting friend unless it shall appear that

the latter had independent advice and acted not only of his own volition but with full comprehension of the results of his action. (*Cox* v. *Schnerr,* 172 Cal. 371, 379 [156 P. 509].)

Persons standing in a confidential relation toward others will not be permitted to retain benefits which the others have conferred upon them unless they can show to the satisfaction of the court that the person by whom the benefits have been conferred were independently advised with reference to the transaction. (*Burrows* v. *Burrows,* 136 Cal.App. 323, 329 [28 P.2d 1072].) No one who holds a confidential relation toward another will be permitted to take advantage of that relation in favor of himself or deal with the other upon terms of his own making. In every such transaction the law will presume that the person who held an influence over the other exercised it unduly to his own advantage. (*Khoury* v. *Barham,* 85 Cal.App.2d 202, 212 [192 P.2d 823].)

It is uncontroverted that neither of the plaintiffs had any advice whatever concerning the execution of the documents which they signed; that they did not act of their own volition but upon the insistence of defendants through the persuasion of Carmelita that their signatures on the papers were necessary in order that Glen might obtain the money from the bank. The evidence is also clear that plaintiffs did not have any comprehension of the meaning of the documents they signed or of the results which would follow their execution of them.

The evidence heretofore related as to Carmelita's taking over the management of the household affairs, collection of rents and payment of necessary expenses, together with plaintiffs' lack of knowledge of business affairs, establishes the existence of special confidence reposed by plaintiffs in defendants and the fact that the latter took advantage thereof.

A transaction such as is shown by the evidence in this action should command the close scrutiny of a court of equity. Whether the transaction was fair or unfair and whether a party has been imposed upon by those in whom he has reposed a trust are questions for the conscience of the chancellor and his decree will not be disturbed if the record contains any evidence to support his conclusion even though conflicting or contradictory evidence may support an opposing conclusion. (*Pomeroy* v. *Collins,* 198 Cal. 46, 70 [243 P. 657]; *Johnston* v. *Field,* 200 Cal. 644, 646 [254 P. 269].)

Gross inadequacy of consideration combined with the condition of dependence, trust and confidence is sufficient

to sustain a declaration of fraud. (*Gatje* v. *Armstrong*, 145 Cal. 370, 373 [78 P. 872].)

Defendants contend that the court erred in setting aside the deeds without a refund or an offer of refund of the consideration paid. The evidence is uncontradicted that plaintiff Henry received nothing whatever for the deed of 1943 and that the check for $500 was deposited in Glen's bank account where it remained until after his coming of legal age, and the money was then paid to him.

Insofar as Glen is concerned, he was a minor under the age of 18 years at the time he executed the first deed and it is therefore void *ab initio* and he owed no legal duty upon disaffirmance to restore the consideration received by him. (Civ. Code, §§ 33, 35*; *Niemann* v. *Deverich*, 98 Cal. App.2d 787, 792 [221 P.2d 178, 182]; *Lee* v. *Hibernia S. & L. Soc.*, 177 Cal. 656, 659 [171 P. 677]; *Maier* v. *Harbor Center L. Co.*, 41 Cal.App. 79, 81 [182 P. 345].) A person dealing with an infant does so at his peril. The law shields minors from their lack of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people, thus discouraging adults from contracting with them. (*Niemann* v. *Deverich, supra.*)

Admittedly there was no consideration for the deed of 1947. Nothing whatever was paid to or received by either one of the plaintiffs in return for its execution. The money which was in Glen's bank account and which had been placed there as the purported consideration for the deed of 1943 and which he was under no obligation to return was withdrawn from the bank and handed to him upon Carmelita's insistence that he could not receive the money until he had signed the second deed—a statement which she knew to be untrue. The

---

* Section 33 reads: "A minor cannot give a delegation of power, nor, under the age of eighteen, make a contract relating to real property, or any interest therein, or relating to any personal property not in his immediate possession or control."

Section 35 reads: "In all cases other than those specified in sections thirty-six and thirty-seven, the contract of a minor, if made whilst he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within a reasonable time afterwards; or, in case of his death within that period, by his heirs or personal representatives; and if the contract be made by the minor whilst he is over the age of eighteen, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received, or paying its equivalent."

money was his and had been since 1943, and he was entitled to receive it without any condition whatsoever.

Defendants next attack the finding to the effect that plaintiffs have always been in possession and entitled to the possession of the property. Whether or not they were in actual possession is of little moment since under the evidence and the findings they were entitled to possess it at all times after they received title to the property by the exchange of deeds prior to the death of Mary Sparks. Furthermore, from the date of the latter's death Henry continued to reside upon the premises and resided there at the time of the trial. Glen remained with his father until he enlisted in the Navy and after his discharge returned to the property where he resided for a considerable length of time. The court did not err in making the finding of which defendants complain.

Entirely devoid of merit is defendants' contention that the court erred in finding that Henry and Mary conveyed the property to Henry and Glen. The evidence has been recounted as to the conveyance by Henry and Mary to Gordon and Carmelita and in turn their conveyance to Henry and Glen. Such deeds were executed for the purpose of transferring title from Henry and his wife to Henry and his son Glen, and the intervention of the deed from Carmelita and Gordon does not alter the ultimate fact.

Defendants' next contention is that there is no evidence to support the finding that defendants received no consideration for the deed of April 28 "1935." Since there was no deed of that date it is an obvious typographical error in the finding, and the date intended was April 28, "1943." Inasmuch as the joint tenancy deeds above referred to were executed in 1935 it is patent that in preparing the findings there was a clerical error in the date, and the question needs no further consideration.

Defendants' contention that the record fails to reveal any evidence to support the finding that plaintiffs did not intend to sell and did not sell their interest in the property and did not know until March, 1948, that defendants claimed title to the property, has been fully covered in the foregoing statement of facts and discussion.

Points numbered 8 to 17, inclusive, in defendants' brief, that the evidence is insufficient to sustain certain findings therein mentioned, need not be separately answered since defendants concede that they are but repetitious restatements of matters argued at length in previous portions of

the briefs. All those contentions have been fully covered by this opinion.

Finally, defendants maintain that the judgment goes beyond the pleadings in that the amended complaint upon which the trial was had was based on the deed of 1943 and did not contain any allegation concerning the deed of March, 1947. Defendants make the statement in their brief that plaintiffs asked and obtained leave to amend their amended complaint to correspond to proof but that no such amendment was ever made. On the contrary, the record shows that at the close of the evidence plaintiffs' counsel made a motion to amend the amended complaint to conform with the proof by including therein a paragraph of the original complaint which contained sufficient and pertinent allegations with reference to the deed of 1947, and that the court granted the motion and permitted the amendment. The court stated that the amendment was proper for the reason that evidence had been introduced by both plaintiffs and defendants without objection from either side with respect to the execution of the deed of 1947. ▮▮▮ Since the case was tried upon the theory that the validity of the latter deed was before the court and evidence was introduced thereon without objection, the allowance of the amendment was not error and the point would not have been available to defendants even though no amendment had been made. (*Grimes* v. *Nicholson*, 71 Cal. App.2d 538, 543 [162 P.2d 934]; *Priebe* v. *Sinclair*, 90 Cal. App.2d 79, 87 [202 P.2d 577]; *McClure* v. *Donovan*, 33 Cal. 2d. 717, 730-1 [205 P.2d 17].)

The interlocutory judgment ordering an accounting and the final judgment are affirmed.

Moore, P. J., and McComb, J., concurred.